**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

WILLIAM CURTIS,           :

                      :        Civil Action No. 03-4981 (KSH)

          Petitioner,    :

                      :

       v.                 :

                      :              **OPINION**

TERRENCE MOORE, et al.,     :

                      :

          Respondents. :

---

**APPEARANCES:**

> WILLIAM CURTIS, Petitioner <u>Pro</u> <u>Se</u>
> #415636/86348B
> Riverfront State Prison
> P.O. Box 9104
> Camden, New Jersey 08101
>
> PAULA T. DOW, ESQ.
> Office of the Essex County Prosecutor
> Essex County Courts Building
> Newark, New Jersey 07102
> Attorneys for Respondents

**HAYDEN, District Judge**

This matter is before the Court on petitioner William Curtis' application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

## I.   BACKGROUND

A.   Procedural History

Petitioner, William Curtis ("Curtis"), is presently confined at the East Jersey State Prison in Rahway, New Jersey, serving an extended term of life imprisonment with 25 years of parole ineligibility, plus a consecutive term of ten years with a five year period of parole ineligibility.

Curtis was convicted by bench trial in the Superior Court of New Jersey, Law Division, Essex County in June 1991 on charges of criminal trespass, attempted murder, second degree aggravated assault, second degree burglary, witness tampering, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon.  Curtis appealed his final judgment of conviction to the New Jersey Appellate Division.  In an unpublished per curiam Opinion decided December 28, 1992, the Appellate Division affirmed the conviction.  (Appellate Division Opinion, decided December 28, 1992, Respondents' Exhibit F[1]).  The New Jersey

_____

[1]   The respondents submitted an appendix with their answer to the petition, which includes the relevant state court record. The respondents identify the record by reference to letter exhibits, i.e., Exhibit A through Z, and Exhibit 1A through 1L. The transcripts of the bench trial, the sentencing hearing and the state post-conviction relief ("PCR") proceedings are designated separately as follows:

    1T - May 28, 1991 proceedings.
    2T - May 29, 1991 trial transcript.
    3T - May 30, 1991 trial transcript.
    4T - May 31, 1991 trial transcript.
    5T - June 3, 1991 trial transcript.

Supreme Court denied certification on March 9, 1993.  (Exhibit G).

Shortly thereafter, Curtis filed his first state post-conviction relief petition ("PCR"), alleging claims of ineffective assistance of counsel, among other claims, and moved to obtain the victim's mental health records.  A hearing was conducted on August 5 and 12, 1994, and the PCR court denied relief on August 12, 1994.  The PCR court conducted another hearing on December 12, 1996 with respect to petitioner's request for an evidentiary hearing, and the court denied the requested relief that same day because Curtis had not presented a <u>prima facie</u> case necessary for an evidentiary hearing.

Curtis appealed from the denial of his PCR petition, and the Appellate Division affirmed in an unpublished Opinion, decided February 8, 2000.  (Exhibit Y).  The New Jersey Supreme Court denied certification on June 7, 2000. (Exhibit Z).  Curtis then filed a second PCR petition on July 17, 2000.  (Exhibit 1A).  The second PCR petition was denied by written Opinion and Order, without a hearing, on or about April 19, 2001 (Exhibits 1E and

---

6T - June 4, 1991 trial transcript.
7T - June 27, 1991 sentencing transcript.
8T - August 5, 1994 transcript of PCR proceedings and motion for mental health records.
9T - August 12, 1994 transcript of continued motion hearing regarding mental health records.
10T - December 12, 1996 transcript of PCR petition proceedings.

1F).  Curtis appealed, and the Appellate Division affirmed by an unpublished Opinion dated November 13, 2002.  (Exhibit 1K).  The Supreme Court of New Jersey denied certification on September 8, 2003.  (Exhibit 1L).

Curtis then filed this federal habeas petition on or about October 20, 2003.  The respondents answered the petition on April 27, 2004.

B.  Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference under 28 U.S.C. § 2254(e)(1), will simply reproduce the New Jersey Appellate Division's factual recitation:

> The State's evidence showed that on the evening of August 15, 1987, defendant entered the apartment of his former girlfriend, Joanne Kendrick, through the bedroom window while she was away.  Some of her clothing lying on her bedroom floor was burning and there was reason to believe defendant had set the fire.  He was arrested and charged with burglary and arson.  He asked Kendrick to drop the charges, but she refused.  On October 3, 1987, while Kendrick was in her apartment with Harvee Benton and another friend, drinking and shooting cocaine, defendant went to her apartment, asked Kendrick to come into the hallway to speak with him, and then punched her and threw her down the stairs.  Unable to find a ride, Benton walked with Kendrick to a nearby hospital where she was examined, her ankle was bandaged, and she was released.  They then walked back to Kendrick's apartment.  Benton left briefly to go to her own apartment, intending to return and spend the night with Kendrick.  While Benton was away, defendant knocked on Kendrick's door, forced his way in when she would not admit him, and, using a pushbutton pocket knife with a slender, six inch blade, stabbed her between ten and fifteen times in the back, hands, chest, arms, and stomach.  She was rushed to the hospital in critical condition, but she survived. While she was in intensive care just after having been

4

brought to the hospital, she identified defendant as the person who had stabbed her.

On the witness stand, Kendrick described these events in detail, unequivocally identifying defendant as her assailant.  Benton, who was present when defendant threw Kendrick down the stairs and returned to Kendrick's apartment shortly after she had been stabbed, but defendant had left, corroborated Kendrick's testimony about those events which Benton had witnessed.  Defendant also testified.  He denied that he had entered Kendrick's apartment through a window or that he had set a fire there. He denied that he had punched Kendrick or thrown her down the stairs, and he denied that he had stabbed her.  He admitted that immediately after the stabbing, when he learned that he was a suspect, he stopped going to his job, had his mother collect his last paycheck, and fled to California.

(Appellate Division Opinion, decided February 8, 2000, at pp. 2-3, Exhibit Y).

## II.  CLAIMS FOR HABEAS RELIEF

Curtis raises the following claims in his federal habeas petition: (1) the denial of post-conviction relief without an evidentiary hearing with respect to medical records of the victim violated petitioner's right to due process; (2) the Appellate Division violated petitioner's right to due process in affirming the PCR court's denial of post-conviction relief without an evidentiary hearing; and (3) the enhancement of petitioner's sentence violated his constitutional rights under the Sixth and Fourteenth Amendments.

The State argues that petitioner's claims are without merit. The State also asserts that the petition is time-barred and that the claims are procedurally barred.

III.  <u>STATUTE OF LIMITATIONS ANALYSIS</u>

The Court finds that this habeas petition was timely filed. The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Section 2244(d) became effective on April 24, 1996 when the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law.  <u>See</u> <u>Burns v. Morton</u>, 134 F.3d 109, 111 (3d Cir. 1998); <u>Duarte v. Herschberger</u>, 947 F. Supp. 146, 147 (D.N.J. 1996).  The Third Circuit has ruled that state prisoners whose convictions became final before the April 24, 1996 enactment of AEDPA are permitted one year, until April 23, 1997, in which to file a federal habeas petition under § 2254.  <u>See</u> <u>Burns</u>, 134 F.3d at 111.  <u>See also</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 326-27 (1997)("[t]he statute reveals Congress' intent to apply the amendments to chapter 153 only to such cases as were filed after the statute's enactment").

Here, Curtis' judgment of conviction became final before AEDPA was enacted, so he had one year from April 24, 1996, or until April 23, 1997, to file his habeas petition.  However, the one-year limitations period is tolled during the time a properly filed application for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2).  An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled, from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Saffold, 536 U.S. 214 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, Swartz v. Meyers, 204 F.3d at 420-24. Nevertheless, "the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)."  Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

Here, Curtis had filed his first state PCR petition before April 23, 1997; thus, the limitations period was tolled during the time that his PCR petition was pending until the state Supreme Court denied certification on June 7, 2000.  Curtis'

7

limitations period began to run from June 7, 2000, for about 40
days, until it was again tolled when Curtis filed his second PCR
petition on July 17, 2000.  The limitations period remained
tolled until the New Jersey Supreme Court denied certification on
September 8, 2003.  Curtis filed his federal habeas petition on
or about October 20, 2003, well within the one year period of
limitations.

IV.   PROCEDURAL DEFAULT ANALYSIS

Next, respondents contend that the petition is procedurally
barred.  It is well established that a state prisoner applying
for a writ of habeas corpus in federal court must first
"exhaust[] the remedies available in the courts of the State,"
unless "there is an absence of available State corrective
process[] or ... circumstances exist that render such process
ineffective ... ."  28 U.S.C. § 2254(b)(1); see also 28 U.S.C.
§2254(c); Rose v. Lundy, 455 U.S. 509, 510 (1982); Johnson v.
Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).  A petitioner exhausts
state remedies by presenting his federal constitutional claims to
each level of the state courts empowered to hear those claims,
either on direct appeal or in collateral post-conviction
proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,
847 (1999) ("requiring state prisoners [in order to fully exhaust
their claims] to file petitions for discretionary review when
that review is part of the ordinary appellate review procedure in

8

the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal), cert. denied, 532 U.S. 919 (2001); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  Id. at 277.

Failure to exhaust may be excused on the basis that state process is unavailable, but "state law must clearly foreclose state court review of unexhausted claims."  Toulson, 987 F.2d at 987.  In addition, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities

of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused." Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied, 484 U.S. 946 (1987).[2]

When a claim has not been fairly presented to the state courts because state procedural rules bar the prisoner from seeking further relief in state court, the exhaustion requirement is satisfied because there is "an absence of available State corrective process." 28 U.S.C. § 2254(b). See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). However, when a state procedural rule has prevented the state courts from reaching the merits of a petitioner's federal claims, federal habeas review of those claims ordinarily is barred because the petitioner has procedurally defaulted the claims. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). Where one state judgment rejects a petitioner's federal claims on state procedural grounds, "later unexplained orders upholding that

--------

[2] However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." Mayberry, 821 F.2d at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." Id. at 187.

judgment or rejecting the same claims rest upon the same ground."
Id. at 803.[3]

> A procedural default occurs when a prisoner's federal
> claim is barred from consideration in the state courts
> by an "independent and adequate" state procedural rule.
> See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d
> Cir. 1996)].  Federal courts may not consider the
> merits of a procedurally defaulted claim unless the
> applicant establishes "cause" to excuse the default and
> actual "prejudice" as a result of the alleged violation
> of the federal law or unless the applicant demonstrates
> that failure to consider the claim will result in a
> fundamental "miscarriage of justice."  Coleman v.
> Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court
"will presume that there is no independent and adequate state
ground for a state court decision when the decision 'fairly
appears to rest primarily on federal law, or to be interwoven
with the federal law, and when the adequacy and independence of
any possible state law ground is not clear from the face of the
opinion.'"  Coleman, 501 U.S. at 734-35 (quoting Michigan v.
Long, 463 U.S. 1032, 1040-41 (1983)).[4]  Only a "firmly

---

[3] A petitioner's procedural default precludes federal habeas
review only if the last state court rendering a judgment in the
case rests its judgment on the procedural default.  Harris v.
Reed, 489 U.S. 255, 262 (1989).  Where a state-court decision is
ambiguous, the federal habeas court may address a federal issue
considered by the state court.  Id. at 262-63.

[4] A state court's reliance on a procedural bar as an
alternate holding is sufficient to trigger the "cause" and
"prejudice" test.  See United States ex rel. Caruso v. Zelinsky,
689 F.2d 435, 440 (3d Cir. 1982).

established and regularly followed state practice" is adequate to
prevent subsequent habeas review in federal court.  <u>James v.
Kentucky</u>, 466 U.S. 341, 348-351 (1984).  <u>See also</u> <u>Lee v. Kemna</u>,
534 U.S. 362, 376 (2002) ("Ordinarily, violation of "firmly
established and regularly followed" state rules ... will be
adequate to foreclose review of a federal claim." (citations
omitted)).  Generally speaking, "[a] state court's refusal to
address a prisoner's federal claims because he has not met a
state procedural requirement is both independent and adequate."
<u>Cabrera v. Barbo</u>, 175 F.3d 307, 312 (3d Cir. 1999) (citations
omitted), <u>cert</u>. <u>denied</u>, 528 U.S. 886 (1999).

Here, on petitioner's appeal from denial of his second PCR
petition, the Appellate Division State court determined that
Curtis' claims were without merit.  Specifically, the court
ruled:

> We have carefully considered defendant's arguments in light
> of the record and the applicable law and conclude that they
> are without sufficient merit to warrant discussion in a
> written opinion.  <u>R.</u> 2:11-3(e)(2).  We affirm substantially
> for the reasons set forth by Judge Fullilove in his
> comprehensive and well-considered written opinion of April
> 18, 2001.

(Appellate Division Opinion, decided November 13, 2002, at pg. 4,
Exhibit 1K).

Review of Judge Fullilove's April 18, 2001 letter opinion
shows that the second PCR petition was denied on the merits and
not because it was deemed to be procedurally barred.  In fact,

Judge Fullilove determined that neither N.J. Ct. R. 3:22-5 nor 3:22-12 barred Curtis' second PCR petition.  (Exhibit 1E at pg. 5).  Thus, there is no clear and unambiguous determination by the state courts that the claims were dismissed solely on the grounds of a state procedural rule of law.  Rather, the courts determined that the claims were without substantive merit.  Thus, this Court finds that the claims as asserted by Curtis in this habeas petition are not procedurally defaulted, and will now address the merits of Curtis' habeas petition.

V.  STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Curtis is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122

13

S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir.
1996)(<em>citing</em> <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section
2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may
issue.  The first clause, or condition, is referred to as the
"contrary to" clause.  The second condition is the "unreasonable
application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  <u>Id</u>.  Under the
"unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

15

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. Id. AEDPA prohibits such *de novo* review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

16

VI.   ANALYSIS

A.   Failure to Grant an Evidentiary Hearing

In his first claim for relief, Curtis asserts that the first
PCR court denied him due process when it failed to grant Curtis
an evidentiary hearing on the issue of whether his trial counsel
was ineffective for failing to investigate the facts of his case,
research the law, and present expert medical testimony regarding
the mental impairment of Kendrick and Benton at trial.

Errors in state post-conviction relief proceedings are
collateral to the conviction and sentence and do not give rise to
a claim for federal habeas relief.  See, e.g., Ferguson v. State,
1996 WL 1056727 (D.Del. 1996) and cases cited therein.
Furthermore, as a general rule, matters of state law and rules of
procedure and evidence are not reviewable in a federal habeas
petition.  The Supreme Court has stated that "it is not the
province of a federal habeas court to reexamine state-court
determinations on state-law questions."  Estelle v. McGuire, 502
U.S. 62, 67-68 (1991).

Federal courts must afford the states deference in its
determinations regarding evidence and procedure.  See Crane v.
Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the
power of the States to exclude evidence through the application
of evidentiary rules that themselves serve the interests of
fairness and reliability, even if the defendant would prefer to

17

see that evidence admitted").  It is well-established that "a
state court's misapplication of its own law does not generally
raise a constitutional claim.  The federal courts have no
supervisory authority over state judicial proceedings and may
intervene only to correct wrongs of constitutional dimension."
Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations
omitted), cert. denied, 522 U.S. 1109 (1998).

Here, Curtis' claim asserts that the PCR court's denial of
an evidentiary hearing violated due process.  Thus, the
appropriate inquiry is "whether the claimed error of law is a
fundamental defect which inherently results in a complete
miscarriage of justice or in an omission inconsistent with the
rudimentary demands of fair procedure."  Hutchins v. Hundley,
1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citing
United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert.
denied, 496 U.S. 939 (1990))(other citations omitted).  The
Supreme Court has further stated that "an otherwise valid
conviction should not be set aside if the reviewing court may
confidently say on the whole record that the constitutional error
was harmless beyond a reasonable doubt."  Delaware v. Van
Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if
"it aborts the basic trial process or denies it altogether."
Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S.
570, 578 n.6 (1986)).

18

In this case, a careful review of the PCR proceedings and the state court rulings reveals that Curtis failed to establish a prima facie case of ineffective assistance of counsel that would have allowed the state court to grant an evidentiary hearing. The Court finds that the state PCR courts committed no errors of a constitutional dimension.  Further, there is no showing that the state court determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Williams, 529 U.S. at 412-13.

For instance, on appeal in the first PCR proceeding, the state appellate court, applying Strickland v. Washington, 466 U.S. 668 (1984) and State v. Fritz, 105 N.J. 42 (1987), ruled that Curtis was not entitled to post-conviction relief because he was unable to prove that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  The court specifically found that there was no deficient performance by trial counsel, but even if the court were to assume deficient representation, with respect to the motion to obtain Kendrick's psychiatric records, defense

counsel "had them all", referring to the New Jersey hospital

records.  (Exhibit Y, at pp. 6-7).

> Kendrick's identification testimony was cogent and
> convincing.  No evidence has been offered tending to show
> that those records or expert testimony based on them would
> have materially affected its credibility.  Defendant claims
> that there are records of Kendrick's hospitalizations for
> psychiatric reasons somewhere in Florida, but there is no
> indication at what Florida hospital she may have been
> treated.  No expert testimony has been offered that the
> cocaine and alcohol ingestion admitted by Kendrick and
> Benton was capable of raising a reasonable doubt about their
> identification of defendant as Kendrick's assailant.  In
> other words, there is no evidence that any further
> investigation of records which defendant's trial counsel
> might reasonably have conducted would probably have caused
> the result of his trial to be different.

(Exhibit Y, at pg. 7).

On his second PCR petition, raising similar claims of

ineffective assistance of counsel, the Appellate Division again

affirmed denial of post-conviction relief substantially for the

reasons set forth in the PCR court's letter opinion of April 18,

2001.  (Exhibit 1K at pg. 4).  The PCR court noted that there is

no automatic right to an evidentiary hearing, and that the

conduct of such hearings are permitted at the judge's discretion,

pursuant to N.J. Ct. R. 3:22-10.  See State v. Preciose, 129 N.J.

451, 462 (1992).  (Exhibit 1E, at pg.3).  The Preciose court

stated that "trial courts ordinarily should grant evidentiary

hearings to resolve ineffective-assistance-of-counsel claims if a

defendant has presented a *prima facie* claim in support of pos-

conviction relief."  129 N.J. at 462.  As in the first PCR

proceeding, the second PCR court applied the standard under
Strickland, Fritz, and United States v. Cronic, 466 U.S. 648
(1984). Ultimately, the PCR court held that Curtis was not
entitled to an evidentiary hearing under Preciose because Curtis
had failed to establish a prima facie case of ineffective
assistance of counsel. (Exhibit 1E, at pp. 6-9).

Evidentiary hearings are afforded only when a petitioner can
show a reasonable likelihood that his claims will succeed on the
merits, or when the facts necessary to determine the claim lies
outside of the trial record. Preciose, 129 N.J. at 462. Thus,
for the reasons cited by the PCR courts, Curtis was unable to
satisfy the requirement that his counsel was deficient or that
the alleged deficiency actually prejudiced petitioner, such that
it had a reasonable potential for affecting the outcome of the
trial or appeal. Curtis has not demonstrated that the state
court decisions, when evaluated objectively and on the merits,
resulted in an outcome that cannot be reasonably justified.
Matteo, 171 F.3d at 891. Hence, an evidentiary hearing was not
warranted, and Curtis was not denied due process or any other
federally protected right. His claim with respect to denial of a
state evidentiary hearing will be denied as substantively
meritless.

B.   The State Appellate Court Ignored Medical Evidence

In his second claim, Curtis contends that the Appellate Division violated his Sixth and Fourteenth Amendment rights by ignoring evidence contained in Curtis' first PCR petition relating to medical evidence that would have impeached the credibility of the victim and another witness, Harvee Benton. This claim was raised by Curtis in his second PCR petition as part of his claim that his appellate PCR counsel was ineffective. To the extent that Curtis is asserting that his PCR counsel in his first PCR proceeding, and on appeal in that proceeding, was deficient, such claim is not cognizable in a federal habeas action and will be dismissed pursuant to 28 U.S.C. § 2254(i).[5]

Moreover, it appears that petitioner is simply rehashing his first claim, which this Court has denied as substantively meritless in this Opinion at Section VI.A above.  Indeed, Curtis' second claim attempts to reargue his ineffective assistance of trial counsel claim by asserting that the PCR appellate court erred in ignoring the evidence set forth in petitioner's first PCR proceeding, namely, that there should have been expert testimony about the effects the drugs and alcohol had on the witnesses' (Kendrick and Benton) credibility and the reliability

_____

[5]   Section 2254(i) provides: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

of their testimony at trial.   The second PCR court found no basis for petitioner's claim:

> The PCR judge denied your motion to obtain the psychiatric and psychological records, remarking that such records were already disclosed as part of the medical records received by Defendant, and that the Florida records could not be located.  In addition, the judge ruled that a psychiatric expert would be unable to properly assess Kendrick's mental health status at the time of her testimony.  See id.

(Exhibit 1E, at pg. 7).

Furthermore, on appeal of the first PCR ruling, the Appellate Division concluded that "there [was] no evidence that any further investigation of records which defendant's trial counsel might reasonably have conducted would probably have caused the result of his trial to be different. (Exhibit Y, at pg. 7).  Thus, the second PCR court held that Curtis' counsel at trial and in his PCR proceedings were not deficient in presenting Curtis' claims, but rather, the evidence introduced in the PCR proceedings was not sufficient to show good cause for an evidentiary hearing.  (Exhibit 1E, at pg. 8).

Therefore, this Court finds that the Appellate Division did not ignore evidence presented in the PCR proceedings, as argued by Curtis in this petition.  This Court carefully reviewed the record of the state PCR proceedings, and the record shows that Curtis' "evidence" failed to establish a prima facie case of ineffective assistance of counsel that would have allowed the state court to grant an evidentiary hearing.  Accordingly, as

stated above, the Court finds that the state PCR and appellate courts committed no errors of a constitutional dimension in denying an evidentiary hearing.  This claim likewise will be denied for lack of merit.

C.   Enhanced Sentence Claim

Finally, Curtis argues that the sentencing court enhanced his sentence with the use of aggravating factors that could be considered elements of the crime of attempted murder, and imposed two extended terms in violation of New Jersey's multiple sentencing provisions, N.J.S.A. 2C:44-5a(2).

Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review.  Ervin v. Beyer, 716 F. Supp. 163, 165 (D.N.J. 1989); see also Johnson v. Beto, 383 F.2d 197, 198 (5th Cir. 1967), cert. denied, 393 U.S. 868 (1968).  Indeed, absent some constitutional violation, federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure.  Rorie v. Beard, Civ.A.No. 04-3380, 2005 WL 825917, *5 (E.D. Pa. April 7, 2005)(citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)).  Thus, a federal court will not reevaluate a sentence in a habeas proceeding unless it exceeds the statutory limits.  Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d Cir. 1984); see also Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), cert. denied, 469

24

U.S. 1229 (1985)("As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits."); <u>Bonner v. Henderson</u>, 517 F.2d 135, 136 (5th Cir. 1975)("This Court will not upset the terms of a sentence within statutory limits unless so disproportionate to the offense as to be completely arbitrary and shocking").

In response to Curtis' petition, the respondents concede the last point, with respect to the two extended sentences in violation of N.J.S.A. 2C:44-5a(2), but contend that the issue of the legality of the sentence is not cognizable on federal habeas review and must be remanded to the state court for amendment.

The sentencing court granted the State's motion for sentencing Curtis as a persistent offender under N.J.S.A. 2C:44-3a.  In doing so, the court found no mitigating factors, and the following aggravating factors, to support imposition of a parole ineligibility term: (1) the risk that Curtis will commit another offense; (2) Curtis' prior criminal record; (3) the need to deter Curtis and others from violating the law; and (4) the especially cruel, heinous, and depraved nature and circumstances of the offense.  <u>See</u> N.J.S.A. 2C:44-1a(3), (6), and (9).  (7T 21:6-22:20; 29:24-32:11).  The court also determined that the sentences imposed on Counts Three (first degree attempted murder) and Seven (third degree witness tampering) should be served consecutively because there are "no free crimes" and these counts

25

constitute separate threats and acts of violence committed at different times. (7T 33:12-34:5). Consequently, the court sentenced Curtis to life imprisonment with a 25-year parole disqualifier on the first degree attempted murder count, with 18-month concurrent terms on Counts One and Nine (Counts Four, Five and Eight were merged into Count One for sentencing purposes), and an extended consecutive term of ten years in prison with a five year period of parole ineligibility on the witness tampering count. The aggregate term was life plus ten years with a 30-year parole disqualifier. (7T 32:12-34:22).

In affirming Curtis' sentence, the Appellate Division found that the sentencing court complied with the mandates of State v. Dunbar, 108 N.J. 80 (1987) for the imposition of an extended term. The court further held:

> We are satisfied that the reasons placed upon the record by the trial judge fully support the sentence imposed and that he did not, as alleged by defendant, exaggerate the seriousness of defendant's prior record. In addition, the consecutive sentences imposed followed the guidelines of State v. Yarborough, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014 (1986).

(Exhibit F, at pg. 4).

In his second PCR petition, Curtis again raised the claim that his extended sentence was illegal, this time based on Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Specifically, the Court invalidated New Jersey's hate crime sentencing enhancement statute, which calls for an extended term where a trial judge finds by a preponderance of the evidence that the "defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J.S.A. 2C:44-3(e). However, as the second PCR court correctly observed, the <u>Apprendi</u> Court did not invalidate all sentence enhancement statutes. "Thus, N.J.S.A. 2C:44-3(a) is constitutional, and [petitioner's] arguments to the contrary are without merit." (Exhibit 1E, at pp. 2-3).

Upon careful review of the sentencing transcript, this Court finds that the sentencing court evaluated the aggravating and mitigating factors in a fair and reasonable manner based on the evidence proven at trial. The sentencing court's determination of the aggravating factors and non-existence of mitigating factors to support an extended term, pursuant to the relevant state law under N.J.S.A. 2C:44-3(a), was not arbitrary or capricious and did not constitute a due process or Eighth Amendment violation. <u>See</u> <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 783 (1990).

27

Moreover, in affirming the consecutive sentences, the Appellate Division also found that the trial court correctly followed the guidelines of Yarborough.   In Yarborough, the New Jersey Supreme Court set forth five factors to guide a trial court in determining whether to impose consecutive or concurrent sentences: (1) whether "the crimes and their objectives were predominately independent of each other"; (2) whether they "involved separate acts of violence or threats of violence"; (3) whether they "were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior"; (4) whether they "involved multiple victims"; and (5) whether "the convictions for which the sentences are to be imposed are numerous."   100 N.J. at 643-44.[6]

---

[6]   In 1993, the New Jersey State Legislature overruled Yarborough by eliminating the cap on the number of consecutive sentences that could be imposed pursuant to the sixth factor in Yarborough ((6) "there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses." 100 N.J. at 644).   The Legislature amended N.J.S.A. 2C:44-5a(2) to provide that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple sentences.   Nevertheless, state courts still apply the Yarborough criteria in determining whether to impose consecutive sentences. A trial judge's discretion remains guided by the seminal precepts elucidated in Yarborough.   State v. Ellis, 346 N.J. Super. 583, 590 (App. Div. 2002).   The Court notes, however, that the crimes for which petitioner was convicted were committed in 1987 before the amendment of N.J.S.A. 2C:44-5a(2); therefore, the Yarborough factors clearly apply.

The trial court in this case succinctly stated its reasons for imposing a consecutive sentence: "These crimes were committed at different times.  The punishment is to be in proportion to the offense, not the rehabilitative potential of the defendant. Apparently, probation, incarceration, parole have not deterred this defendant from continuing in his criminal activities.  There shall be no free crimes.  These crimes involve separate threats of violence or acts of violence."  (7T 33:23-34:5).  <u>Yarborough</u> observes that there are no free crimes.  While the aggregate sentence may seem harsh, it follows the state sentencing scheme. Furthermore, the state courts on direct and collateral review have affirmed the sentence as lawful.  The appellate court concluded that the consecutive sentences were not so wide of the mark as to require modification.  Thus, this Court will not review these state court sentencing determinations where the sentences are not so disproportionate to the offenses as to be completely shocking and arbitrary.  The enhanced sentence did not violate federal constitutional law, and this Court will not interfere with a state court sentencing decision that raises only state law issues.

Finally, to the extent that the trial court imposed two consecutive extended sentences in violation of N.J.S.A. 2C:44-5a(2), this also is an issue of state law error that is not subject to federal habeas review.  Petitioner's challenge as to

29

the legality of the sentence must be brought before the state courts for determination of whether state law has been violated. There is simply no allegation that the extended sentences violate federal constitutional law. Therefore, where petitioner's sentencing claim relates solely to an issue of state law, Curtis fails to state a claim of a federal constitutional deprivation, and his claim will be denied accordingly.

### V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate Order follows.

_____
KATHARINE S. HAYDEN
United States District Judge

DATED:  1 / 18        , 2006